UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MARIA REASER,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br>Acting Commissioner of Social Security,<br><br>Defendant. | CAUSE NO.: 1:18-CV-219-HAB |

**OPINION AND ORDER**

Plaintiff Maria Reaser seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for Disability Insurance Benefits (DIB). Plaintiff alleges that she has been disabled since January 4, 2014, due to a variety of physical impairments, including degenerative disc disease, cervical disc disorder, carpal tunnel, and obesity.

**ANALYSIS**

**A.     The ALJ's Decision**

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that his

physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A).

If a claimant's application is denied initially and on reconsideration, he may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and, if not (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a); *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, January 4, 2014. At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine for which she had undergone remote surgeries, cervical disc disease, for which she had undergone cervical fusion in June 2014, and obesity. The ALJ determined that Plaintiff's bilateral carpal tunnel syndrome was not severe, as Plaintiff had improved following surgery. However, the ALJ recognized that Plaintiff had some limitations in fingering, feeling, and handling that would be addressed in the residual functional capacity.

The ALJ also thought Plaintiff's headaches, although they did not support a severe condition, were a symptom connected to the severe impairment of cervical degenerative

2

disc disease. The symptom supported a restriction from working in loud environments. Plaintiff's non-insulin dependent diabetes was also considered, but found not to be severe.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

Before moving to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a reduced range of sedentary work as defined in 20 C.F.R. § 404.1567(a), with no overhead reaching, no more than frequent bilateral fingering, feeling, and handling, occasional use of ramps/stairs, no use of ladders/ropes/scaffolds, no crawling, kneeling, stooping, or crouching beyond what was necessary to sit and stand, and no more than occasional movement of her neck to change her field of vision. Additionally, she could not work in a loud environment, or work around dangerous moving machinery or unprotected heights.

Based on the above RFC and his hypothetical questions to the vocational expert, the ALJ found that Plaintiff was not able to perform her past relevant work, but that there were other jobs that existed in significant numbers in the national economy. Thus, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act.

**B.** **Standard of Review**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290

F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995), but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of [his] reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

## C. Residual Functional Capacity

RFC measures what work-related activities a claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). It is the most the claimant can still do. *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)). A claimant's RFC must be based upon the medical evidence in the record and other evidence, such as testimony by the claimant or her friends and family. 20 C.F.R. § 404.1545(a)(3). Although an ALJ is not required to discuss every piece of evidence, he must consider all the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *See Barnhart*, 362 at 1002; *Clifford*, 227 F.3d at 870–71. The ALJ must also consider the combined effect of all of the claimant's impairments, including those that are not severe. *See* 20 C.F.R. § 404.1545(e). An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

### 1. *Functional Capacity Exam*

Plaintiff argues that, in arriving at the RFC, the ALJ improperly discounted findings from a March 2016 functional capacity exam (FCE). Plaintiff asserts that the FCE was thorough, based on Plaintiff's full effort, consistent with the treating records of Dr. Mark Reecer, and consistent with the record as a whole. In particular, Plaintiff contends that the ALJ should have credited the findings that Plaintiff could only carry ten pounds

for a single time while going thirty feet or greater distances, that she could rarely move her forearm, and that she could only occasionally sit. (*See* R. 361.)

The ALJ's decision addresses the March 2016 FCE. The ALJ noted that the results of the FCE showed a capacity to lift consistent with sedentary exertion but, overall, would indicate an inability to sustain work at the sedentary exertion level. The ALJ assigned the results of the FCE partial weight. (R. 17.) The ALJ noted Plaintiff's testimony that Plaintiff tried hard on the exam, and that the physical therapist who conducted the exam stopped Plaintiff's testing efforts when she would lose balance. The ALJ cited the record (Exhibit 9F at 12), as noting that every test was terminated quickly or not attempted based on subjective complaints of pain. (R. 16.)

> Therefore, while the examining physical therapist noted the claimant's effort on the FCE as considered good, the basis for such assessment was on validity checks, of which 13/15 were valid, but was unrelated to the fact that every test ended early or was not performed due to subjective complaints of pain. As such, the basis of the FCE assessment was to a substantial degree not on clinical findings of what the claimant could do but rather on what the claimant indicated she could and could not do. In fact, as to the clinical findings and observations related to gait, posture and muscle strength, the findings from the FCE do not comport with those obtained by Dr. Reecer on previous and subsequent physical consultative exams.

(R. 16-17 (citing Exhibits 4F, 7F, 9F, 10F, 11F, 13F, 14F).) The ALJ concluded that, while the FCE findings could possibly be supported "in the context of this one-time exam, they are not consistent with the overall evidence as a whole." (R. 18.)

Plaintiff claims that the ALJ was wrong to conclude that the testing results were not primarily based on clinical findings, but on what Plaintiff indicated she could or could not do. She argues that there is no support for the statement that every test was

6

terminated quickly or not attempted based on subjective complaints of pain. The Court does not find reversible error in the ALJ's assessment.

The tests, by nature, were based on what Plaintiff indicated she could do. Stopping a test, or not performing all of it, "due to subjective complaints of increased pain" or "due to subjective complaints of marked increased pain" are noted throughout the written assessment. (R. 350-360.) What's more, the ALJ noted the limited value of the FCE for other reasons, including that it was not consistent with the evidence as a whole, which included the findings from Dr Reecer who treated her for pain management. No other medical source found the same lifting restriction, or that Plaintiff could only rarely or occasionally sit, or only rarely perform forearm and wrist movements. For example, on February 15, 2017, during a follow-up appointment with Dr. Reecer, no upper extremity deficits were alleged, evidenced, or cited. A March 20, 2017, physical consultative exam resulted in a medical source statement that was essentially consistent with a retained functional capacity to sustain work at sedentary exertion. This included lifting ten pounds occasionally and frequently, sitting eight hours, and standing and walking two hours.

It was appropriate for the ALJ to consider the evidence in the record as a whole. The "more consistent a medical opinion is with the record as a whole, the more weight [is given] to that medical opinion." 20 C.F.R. § 404.1527(c)(4). The ALJ provided adequate insight into how he evaluated the opinion evidence, and why he did not credit the three FCE restrictions at issue. The Plaintiff's arguments are an invitation for the Court to reweigh the evidence and substitute its own judgment for that of the Commissioner. (Pl.'s

7

Br. 12 (asserting that consultative examiner would have been more biased than the FCE examiner); *Id.* (arguing that the ALJ should not have characterized Dr. Reecer's treatment as "conservative").) As noted, the Court is not permitted to substitute its judgment for that of the Commissioner. *Lopez*, 336 F.3d at 539.

## 2. *Incorporation of All Impairments*

Plaintiff argues that the ALJ did not incorporate all her impairments when he determined her RFC. She contends that her obesity, carpal tunnel syndrome, parathyroid, hypocalcemia, and thyroid were not appropriately accounted for.

An ALJ must consider all a claimant's medically determinable impairments, both severe and non-severe, in the aggregate in determining her RFC. When an ALJ determines that one or more of a claimant's impairments are "severe," "the ALJ need[s] to consider the *aggregate* effect of this entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (emphasis in original). "The fact that [an impairment] standing alone is not disabling is not grounds for the ALJ to ignore [it] entirely—it is [its] impact in combination with [the claimant's] other impairments that may be critical to his claim." *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014). "A failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted); *see also Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) (finding that "failure to consider the cumulative effect of impairments not totally disabling in themselves was an elementary error"); *Terry*, 580 F.3d at 477 (noting that even where

8

impairments would "not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether").

Plaintiff alleges that, as a consequence of not fully adopting the restrictions from the March 2016 FCE, the ALJ has also failed to acknowledge the pivotal role obesity played in restricting Plaintiff. She argues,

> Some of the clinical findings for the March 2016 FCE's included the clinical observation that Reaser is "deconditioned" and that her posture includes "a forward head, bilateral rounded shoulders, increased lumbar lordosis" and standing "with decreased weight bearing on the right lower extremity." These detailed and careful clinical findings appear to incorporate reference to her obesity—in a way that no other opinion on the record does explicitly. As such, failure to weight the March 2016 FCE amounts to failure to incorporate or even adequately consider impairments relating to obesity.

(Pl.'s Brief 18.)

The argument is somewhat difficult to follow. First, the ALJ did not reject the FCE findings in totality. Rather, he declined to credit very specific functional limitations on the basis that they were not supported by the record. Second, there is no indication that the other medical opinions in the record failed to account for Plaintiff's obesity, which was well-documented. Third, the ALJ found that Plaintiff's obesity was a severe impairment, which means that he acknowledged that it "alone or in combination" with the Plaintiff's other medically determinable impairments significantly limited her "physical or mental ability to do basic work activities." SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002).

Plaintiff offers nothing more than speculation that her obesity should have led to greater restrictions than those incorporated in the RFC. For example, she argues that with

9

a presumed waist size eight inches greater than if she were not obese, and a "forearm length not believably much exceeding 10 inches, without reaching forward, she would only be able to reach the first two inches of a table in front of her from a seated position." (Pl.'s Brief 14-15.) It is unclear whether Plaintiff is suggesting that the ALJ should have made this determination regarding Plaintiff's reach on his own, as it appears nowhere in the opinion evidence or the treatment records. Plaintiff's argument, which is based on size charts and average forearm lengths, appears to suggest that the RFC for any obese woman must include a reaching restriction. This is an untenable assertion.

Plaintiff also relies on evidence that is not in the record when she argues that the ALJ's RFC finding that she could stand for two hours, and his failure to include position changes, was possibly due to his failure to consider certain impairments.

> For example, the ALJ opinion does not even mention the thyroid problems. Or the parathyroid problems. Or the likely interrelated calcium problems. Consideration of these seems likely to explain how Reasor became so prone to injury, for example, but, left out altogether, they illustrate a lack of close reading of the record, and make the subsequent failure to incorporate basic limitations in the RFC expectable. Nor does the ALJ consider the role of 30-pack years of smoking to the likelihood that surgeries failed. Or that the high sugars could have played a role in numbness too.

(Pl.'s Brief 17-18.)

Plaintiff's hypothesis about potential causes of some of Plaintiff's symptoms is of little help, particularly where the ALJ's decision reveals that he considered the documented symptoms and alleged pain. The ALJ acknowledged Plaintiff's allegations of hand numbness and tingling but noted that the record indicated improvement following cervical fusion and bilateral carpal tunnel syndrome release surgery. He also

noted that examinations before and after those surgeries showed hand functioning in retained grip strength and fine and gross manipulation and dexterity. The ALJ also noted that Dr. Reecer's February 2017 notes and the March 2017 consultative examination were consistent in documenting this retained functioning. Nonetheless, the ALJ accepted some limitation in Plaintiff's use of her hands and included a limitation on bilateral fingering, feeling, and handling in the RFC.

The ALJ also considered evidence bearing on Plaintiff's difficulties walking and her lower back impairments. The ALJ noted that MRIs showed only slight progression from 2011 to 2015, with no significant impingement on the thecal sac or nerve roots. The March 2017 consultative examination also showed normal gait, no need for an assistive device, and the ability to get up from a chair, with no reduced range of motion in the cervical and lumbar areas. Records in May 2015 showed normal gait and station, no muscle atrophy, and normal strength except in the right wrist. The ALJ further considered that Dr. Reecer's most recent notes and the March 2017 examination both showed no acute distress, normal gait and station, and 4/5 muscle strength without atrophy or edema.

On the other hand, the ALJ acknowledged findings of a positive straight leg raise on the right, weakened ankle on the right, sensation deficit in the right thigh and calf, and decreased lumbar range of motion and tenderness. These findings, the ALJ reasoned, were still consistent with sedentary exertion. The ALJ also included restrictions on climbing ladders, ropes, or scaffolds and on crawling, kneeling, stooping, or bending.

In addition, the ALJ considered Plaintiff's cervical complaints, with reported symptoms of pain and tingling and occasional headaches on turning her head. After Plaintiff underwent a cervical fusion, she reported improvement, with good arm strength and steady gait. However, the ALJ restricted Plaintiff from having to change her field of vision by using the neck more than occasionally.

Having undertaken a critical review of the evidence, the Court does not find that the ALJ failed to consider the aggregate impact of the Plaintiff's impairments when determining Plaintiff's RFC.

### 3. *Daily Activities*

Plaintiff argues that the ALJ overemphasized her daily activities and failed to acknowledge the limiting fashion in which they were performed. The Court does not find any merit in this argument.

The ALJ only mentioned Plaintiff's daily activities in a single sentence, as part of recounting her allegations and hearing testimony:

> The claimant reports living with her spouse, who works first shift, and their 20-year old daughter and that on a typical day, she lets out the dog, makes coffee and something simple to eat, takes medication, checks blood sugar levels, does laundry and prepares food for the supper meal.

(R. 15.) Plaintiff does not point to any part of the ALJ's decision where he equated these daily activities with an ability to work full-time. *Cf. Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (criticizing ALJ for critical differences between activities of daily living and activities in full-time job when determining whether claimant was credible).

## CONCLUSION

For the reasons stated above, the Court AFFIRMS the Commissioner's decision.

SO ORDERED on November 21, 2019.

                                         s/ *Holly A. Brady*
                                         JUDGE HOLLY A. BRADY
                                         UNITED STATES DISTRICT COURT